José M. Moraza, Plaintiff and Appellee, *v.* Rexach Racing and Sporting Corporation, Defendant and Appellant.

No. 9444. Argued December 4, 1947.—Decided March 19, 1948.

434

*Celestino Iriarte, F. Fernández Cuyar,* and *H. González Blanes,* for appellant. *Víctor J. Vidal González* for appellee.

Mʀ. Jᴜsᴛɪᴄᴇ Sɴʏᴅᴇʀ delivered the opinion of the Court.

This litigation is the result of a dispute concerning a stable located on the grounds of the race track belonging to the Rexach Sporting Corporation. The stable was "reconstructed" by José M. Moraza, a race horse owner, with the consent of the corporation and used by him for a monthly rental of $15. Moraza thereafter sold the stable to Ernesto Nieves on the theory that he had built it on the property of the corporation and that it belonged to him. Nieves went to José A. Rexach, President of the corporation, for delivery of the stable. The latter refused this request. He told Nieves that the stable belonged to the corporation, not to Moraza, and that the latter had no right to sell it. During their conversation Rexach called Moraza a thief because he was trying to sell the stable. Nieves advised Moraza of this episode. Moraza went to see Rexach, with substantially the same result.

Moraza thereupon sued the corporation, setting up two causes of action. The first prayed for damages of $1,500 because the defendant had refused the request of the plaintiff either to deliver possession of the stable to him (or to his order) or to pay him $1,500, the value thereof. The second was for damages of $25,000 because of the allegedly slanderous statements made by Rexach concerning the plaintiff.

At the start of the trial the district court, relying on *Rivera* v. *Santiago,* 56 P.R.R. 361, granted the motion of the defendant to dismiss the first cause of action for failure to state facts sufficient to constitute a cause of action. The plaintiff took no appeal from that action of the district court. A trial on the merits was held as to the second cause of action. The lower court entered a judgment in favor of the plaintiff for $850 and $100 as attorney's fees, from which the defendant appealed.

██ The first error assigned is that the testimony adduced by the plaintiff was insufficient as a matter of law. Only three witnesses testified for the plaintiff, and the defendant offered no evidence.

Nieves testified that he went to see Rexach and asked him by what authority he had delivered the stable which Nieves had bought from Moraza to a third person; that Rexach replied that the stable belonged to the corporation and that as President of the corporation he could do what he liked with it; that he (Nieves) informed Rexach he had bought the stable from Moraza and had paid him for it; that Rexach answered, "You cannot buy that stable because it does not belong to Moraza. If Moraza sold it he is a thief and one who buys from a thief is a thief himself"; that he saw Rexach at the place where he lived near the race track on a racing day; and that Rexach yelled in a loud voice, causing a crowd to gather and to hear the discussion.

Moraza testified that he is in the business of selling automobiles and owning and racing horses; that he dealt with Rexach as President and "owner" of the corporation; that as a result of the conversation between Nieves and Rexach, he went to see the latter; that he said "Don Pepe, how is it you told Nieves that he could not put his horses there as you know I have talked to you, and I told you I was going to sell the stable to him and it has been sold to him because the stable is mine"; that Rexach replied "I was a thief,

rascal, good-for nothing, a homosexual, that I could not sell that and should mind my own business, so that I finally had to get in my car and leave because so many people gathered there''; that forty or fifty people, coming from the race track, heard these remarks; that as Rexach was about 80 years of age he did not dare answer him and left.

Rafael Pelati Delgado testified in corroboration of the testimony of Nieves as to the discussion between the latter and Rexach.[1]

The district court was apparently of the view that calling a person a ''thief'' automatically gives rise to a cause of action for slander, regardless of the surrounding circumstances or the context in which the epithet is used. In finding for the plaintiff, it said that ''In the common parlance of Puerto Rico the word *'pillo'* is a synonym for 'thief'. To call a person a thief is libelous *per se*. *Jiménez* v. *Díaz ('aneja,* 14 P.R.R. 9; *Palou* v. *Ríos,* 23 P.R.R. 337; *Mulero* v. *Martínez,* 58 P.R.R. 322.''

█ When a statement is slanderous *per se,* recovery lies without proof of special damages. *Méndez* v. *Kraidman,* 63 P.R.R. 270. But under our statute the statement is slanderous *per se* only if it imputes to the plaintiff the commission of a crime. Section 3 of the Act establishing the actions of libel and slander, Code of Civil Procedure, 1933 ed., p. 309.[2]

---

[1] In the course of his testimony Pelati quoted Rexach as having also said: ''Don't you know that Mr. Moraza and other owners of horses robbed the corporation of $20,000 worth of horses?'' There is no allegation in the complaint covering this statement. The complaint says something quite different: that Rexach had said the corporation had ''lost'' twenty thousand dollars with horse owners, including Moraza. The lower court did not base its judgment on this statement. It relied solely on the use of the epithet ''thief'' in connection with the sale by Moraza of the stable. Nor did the plaintiff predicate his claim in the court below or in this Court on this language. We have therefore not considered it in this opinion.

[2] Section 3 also provides that a statement is slanderous if it ''tends directly to injure him in respect to his office, profession, trade or business, or which by natural consequences causes actual damages.'' Neither of these alternatives is involved here. The judgment is predicated solely on a finding that the defendant imputed to the plaintiff the commission of a crime by calling him a ''thief''.

A statement that the plaintiff is a thief is therefore slanderous *per se* if the epithet is used literally to impute the commission of a crime. But if the circumstances and context show that the phrase was uttered figuratively as a mere term of abuse in an outburst of excitement and passion, it does not constitute an imputation that the plaintiff committed a crime and is therefore not slanderous *per se*. Annotation, 37 A.L.R. 883; L.R.A. 1917 D 205; *Hansen* v. *Dethridge*, 67 N.Y.S. (2) 168 (1946); *Jones* v. *Hill*, 146 P. (2) 294 (Okla., 1944); *Dalton* v. *Woodward*, 280 N.W. 215 (Neb., 1938); *Shankroff* v. *La Guardia*, 61 N.Y.S. (2) 839 (1935).

The cases cited by the lower court are in accord with this view. No contention was made in the *Jiménez* case that the defendant was not using the word "thief" literally. And the actual holding was in favor of the defendant on a question not relevant here. In *Mulero* v. *Martínez, supra, Díaz* v. *P. R. Ry., Light & Power Co.*, 63 P.R.R. 776, and cases cited therein, the statements were clear imputations of crime rather than terms of abuse used figuratively.

On the other hand, the *Palou* case is directly in point. There the defendant had leased real property to a firm of which the plaintiff was a member. In the course of demanding payment from the plaintiff of instalments of the rent, the defendant called the plaintiff a "reprobate, a thief and a robber". We reversed the judgment of the district court in favor of the plaintiff, saying at p. 340:

"Now, according to law and jurisprudence, calling a person a thief does not always constitute slander, and after a careful consideration of the evidence introduced and of the findings of fact made by the trial judge, it is not possible, in our opinion, to conclude that the manifest intention of the defendant in this action was to charge the plaintiff with an actual crime of theft or robbery. There is no doubt that the defendant attempted to collect a debt from the plaintiff in an improper and abusive manner. The plaintiff acknowledged the debt, but alleged that not he but a firm of which he was a partner owed the money claimed by the defendant. It was per-

fectly plain to all who heard the defendant that a business matter was under consideration in which a woman, the defendant, being one of the parties to the transaction, in a moment of passion or wrath overstepped the limits of both propriety and self-respect, but did not consciously and deliberately charge the commission of a crime.''

We recently held to the same effect in a criminal case in which the defendant was charged with slander for calling a public official a ''thief''. *People* v. *Pargas,* 67 P.R.R. 767.

We think it equally plain that here an eighty-year old man, in a moment of indignation while discussing a business transaction, overstepped the bounds of propriety. But his language, when heard as part of the discussions as a whole, was a denunciation of the plaintiff for selling a stable which the speaker thought he had no legal right to sell, and not a deliberate and conscious accusation that the plaintiff had committed a crime. Indeed, the plaintiff himself, in failing to appeal from the judgment dismissing the first cause of action, has apparently conceded that there was some justification for the indignation of Rexach because the plaintiff had sold the stable which was located on the land of the defendant corporation. In any event, whatever the merits of the dispute as to the status of the stable, it is evident that the characterization of Moraza by Rexach as a ''thief, rascal, and good-for-nothing'' were expletives produced by annoyance at his conduct and not seriously meant to be an accusation of crime. Indulgence in vituperation and invective is execrable taste; but it is not slander *per se:*

We reach the same result with reference to use of the word ''homosexual''. We assume that if such a statement were made in a sexual context it would be slander *per se.* But, in addition to the fact that the district court did not rely on the use of this epithet, we are satisfied under all the circumstances that once more Rexach was venting his rage on Moraza by vulgar name-calling rather than accusing him of sexual crimes. Rexach may have breached the peace by

his violent language; but it cannot be reasonably said that he meant this or the other opprobious epithets to be taken literally. *Morrissette* v. *Beatte,* 17 A. (2) 464 (R.I., 1941).

Our conclusion as to the first error makes it unnecessary to examine the other errors assigned by the appellant, including the alleged error of holding the defendant corporation liable for the statements made by its President.

The judgment of the district court will be reversed and a judgment will be entered dismissing the complaint.

Mr. Justice Marrero did not participate herein.